IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT ARONSON,** *et. al.***,**

      **Plaintiffs,**

    **v.**                                 **Case No. C2-05-996**

                                          **Magistrate Judge Norah McCann King**

**RHEEM MANUFACTURING CO.,** *et. al.***,**

      **Defendants.**

**OPINION AND ORDER**

Plaintiffs Robert and Joan Aronson ("the Aronsons" or "plaintiffs") bring this action seeking monetary relief for damages allegedly sustained as a result of water damage to the Aronson home. The complaint attributed the damage to either the water heater manufactured by defendant Rheem Manufacturing or the water heater relief valve manufactured by defendant Watts Industries, Inc. ("Watts"). *Complaint*, Doc. No. 1. Plaintiffs bring their claims under the Ohio Products Liability Act, O.R.C. § 2307.71. The Court has subject matter jurisdiction under 28 U.S.C. § 1332. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the *Motion for Summary Judgment* filed by defendant Watts, Doc. No. 17, (*"Defendant's Motion"*) and on plaintiffs' *Cross Motion for Summary Judgment on All Defenses Based on Alleged Global Settlement* ("*Plaintiffs' Motion*"), Doc. No. 19. For the following reasons, the Court **GRANTS** *Defendant's Motion* and **DENIES** *Plaintiffs' Motion*.

**I.**      **BACKGROUND**

On approximately January 21, 2004, the Aronsons experienced a water leak in their home that caused damage amounting to $185,396.76. *Stipulated Facts*[1] ¶¶ 5, 10, attached as *Exhibit A* to *Defendant's Motion* (hereafter *Stipulated Facts*). Plaintiffs reported the water damage to their insurance company, Glen Falls Insurance Company, which underwrites policies for Encompass Insurance.[2] An investigation determined that the water damage had resulted from a failure of Watts's safety relief valve on the Aronsons' hot water heater. *Id.* ¶ 7. Allstate notified Watts of the insurer's potential subrogation claim on April 23, 2004. *Id.* ¶ 9.

Allstate has asserted many claims against Watts over the years arising from alleged product defects, *Stipulated Facts* ¶ 16, and the two parties began to discuss the resolution of some claims in late 2003. *Id.* ¶ 17. As part of that process, the parties reached an interim agreement to temporarily toll the statute of limitations on those claims and met in mediation on June 25, 2004. *Id.* ¶¶ 17, 20. As a result of the mediation, the parties signed a document that provided in part:

> Allstate Insurance, Encompass and Watts Water Technologies, Inc. (collectively known as the parties) do hereby agree to settle all subrogation claims arising from all commercial and personal policies that occurred on or before June 25, 2004 with the exception of claims
>
> currently not known to Allstate's Roanoke Subrogation Claims Office

---

[1] The parties have agreed to a set of stipulated facts for the purpose of their summary judgment motions. Plaintiffs have stipulated to all facts listed in the *Stipulated Facts*, and defendant has stipulated to ¶¶ 1-16, 19, and 23 for purposes of *Defendant's Motion* and ¶¶ 16-18, 21-22, and 25-26 for all purposes. *See Stipulated Facts* ¶ 27.

[2] Encompass Insurance is a division of Allstate Insurance Company. *Stipulated Facts* ¶ 2. Hereinafter, Encompass Insurance and Allstate Insurance Company will be referred to collectively as Allstate.

and not known to Watts which exceed $100,000.00 in payment.

*Id.* ¶ 25. *See also Exhibit B*, attached to *Defendant's Motion*. In addition, that document provided, "A proper release and settlement documents memorializing this agreement will be prepared and executed." *Stipulated Facts* ¶ 25.

Having settled the Aronsons' claim on December 19, 2004, *Id.* ¶ 10, Glen Falls referred that claim to the Allstate Subrogation Claims Center in Roanoke, Virginia, on January 31, 2005. *Id.* ¶ 11. *See also Id.* ¶ 26. This action was filed on October 31, 2005.[3] *Complaint*.

In *Defendant's Motion*, Watts alleges that plaintiffs' claim was previously resolved as part of the global settlement agreement because it was known to Watts prior to June 25, 2004. In *Plaintiffs' Motion*, the Aronsons take the position that the agreement is merely a "statement of understanding" rather than a release and that, in any event, that agreement did not include plaintiffs' claim because Allstate's Roanoke Subrogation Claims Office did not receive notice of the Aronsons' loss until January 31, 2005.

## II.     STANDARD OF REVIEW

The standard for summary judgment is well established. This standard is found in Fed. R. Civ. P. 56, which provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3]Allstate is not, however, a named plaintiff in this action.

However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

**III. ANALYSIS**

The Aronsons argue, first, that Watts must establish its defense based on the settlement agreement by "clear and convincing evidence." *Memorandum of Law in Opposition to Watts Industries, Inc.'s Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion Seeking Dismissal of All Defenses Based on the Alleged Global Settlement Agreement* ("*Plaintiffs' Memorandum"*), attached to *Plaintiffs' Motion*, at 2. Citing *Huffer v. Herman*, 168 F.Supp.2d 815, 823 (S.D.Ohio 2001); *Anschutz v. Radiology Associates of Mansfield*, 827 F.Supp. 1338, 1344 (N.D.Ohio 1993); *In re Rhoads Industries*, 162 B.R. 485, 490 (Bankr. N.D. Ohio 1993), the Aronsons invoke federal law. However, because this is a diversity action, Ohio law applies. Watts argues that, under Ohio law, only oral settlements "require proof by clear and convincing evidence." *Defendant's Reply to Plaintiffs' Motion for Summary Judgment*, Doc. No. 20, at 1-2 (citing *Bernabei v. St. Paul Fire & Marine Ins. Co.,* 2005 WL 351754, at *2 (Ohio Ct. App. Feb. 14, 2005); *Maitlin-Tiano v. Tiano*, No. 99-1266, 2001 WL 15625, at *2 (Ohio Ct. App. Jan. 9, 2001)). In any event, the cases cited by plaintiffs and Watts are not in conflict with each other. The cases on which plaintiffs rely in their motion for summary judgment apply a

4

standard of clear and convincing evidence for *oral* agreements, not *written* agreements, and are therefore consistent with Ohio law on this issue. Because the document upon which Watts relies is in a written form, the clear and convincing standard of proof is inapplicable. Moreover, the Court concludes, as explained *infra*, that Watts has met this burden.

> **A.    The Agreement Signed by the Parties on June 25, 2004, is a Binding Contract.**

After participating in mediation on June 25, 2004, the parties signed a settlement agreement. "Settlement agreements are valid and enforceable by either party." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 502 (1996). A settlement agreement "is a particular kind of contract." *Noroski v. Fallet*, 2 Ohio St. 3d 77, 79 (1982). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3-4 (2002). To be valid, "the terms of the [settlement] agreement must be reasonably certain and clear. ..." *Id.,* at 4.

This Court concludes that the settlement agreement signed by the parties on June 25, 2004, constitutes a valid and binding contract. The agreement is in writing, is signed by both parties, and explicitly provides that the parties "agree to settle all subrogation claims arising from all commercial and personal policies that occurred on or before June 25, 2004." *Stipulated Facts* ¶ 25. In exchange for the release of those claims, the parties agreed that Watts would pay $1 million to Allstate, which Watts in fact did pay. *Id*. Allstate's acceptance of that payment is further evidence that Allstate knowingly entered into a binding contract.

The fact that the agreement also provided that "proper release and settlement documents memorializing this agreement will be prepared and executed" does not alter this analysis. This

5

language contemplated no additional or different terms and the contemplated documents were expressly intended only to "memorialize" the binding agreement that the parties entered into on June 25, 2004.

### B. Plaintiffs' Claim is Not Excluded from the Settlement Agreement

Having determined that the agreement signed by Allstate and Watts on June 25, 2004, constitutes a valid and binding contract, the Court must now determine whether plaintiffs' claim is included within that agreement. The parties agree that certain claims were excluded from the global settlement agreement by the following language: "with the exception of claims currently not known to Allstate's Roanoke Subrogation Claims Office and not known to Watts." *Stipulated Facts* ¶ 25.

Plaintiffs argue that this language was intended to exclude any claim not known to *either* the Roanoke National Subrogation Claims Center *or* Watts. *Plaintiffs' Memorandum* at 6. In other words, plaintiffs contend that the contract is properly interpreted to mean that only claims known to both Allstate and Watts were released. *Id.* Contrarily, Watts argues that the language of the agreement, which is unambiguous, serves to exclude from the release only claims that were unknown to *both* parties. *Defendant's Reply to Motion for Summary Judgment*, Doc. No. 20, at 4. Watts's argument is well-taken.

This Court concludes that the language of the settlement agreement, which is phrased in the conjunctive, is unambiguous. The only claims that are excluded from the agreement, and therefore not released, are those that are "not known to Allstate's Roanoke Subrogation Claims Office *and* not known to Watts." *Stipulated Facts* ¶ 25 [emphasis added]. By the express language of the parties' settlement agreement, a claim known to either party was included in the

6

release, even if that claim was unknown to the other party at the time of the execution of the settlement agreement.  In this action, the Aronsons' claim was known to Watts since the time of Allstate's notification dated April 23, 2004.  *Stipulated Facts* ¶ 9.  Because Watts knew of the Aronsons' claim prior to June 25, 2004, that claim was included in the settlement agreement and was released by operation of the terms of that settlement agreement.

**WHEREUPON**, *Defendant's Motion*, Doc. No. 17, is **GRANTED**, and *Plaintiffs' Motion*, Doc. No. 19, is **DENIED**.

It is unclear to the Court whether any claims asserted by the Aronson plaintiffs against either defendant Rheem or defendant Watts survive the disposition of these motions.  The parties are therefore **ORDERED** to report on the status of this case, in light of this *Opinion and Order,* no later than July 9, 2007.


June 28, 2007                                                                  *s/Norah McCann King*
Date                                                                                   Norah McCann King
                                                                                          United States Magistrate Judge

7